J-A28009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL FELICIANO | |
| Appellant | No. 752 EDA 2014 |

Appeal from the Judgment of Sentence December 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0039542-2013

BEFORE: GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 09, 2015**

Appellant, Angel Feliciano, appeals from the judgment of sentence entered in the Philadelphia County Municipal court, as confirmed by the Philadelphia County Court of Common Pleas on February 27, 2014, following the denial of his petition for writ of *certiorari* from his Municipal court convictions for possession of a controlled substance and possession of marijuana.[1] We affirm.

In its opinion, the Court of Common Pleas fully and correctly sets forth the relevant facts and procedural history of this case. We add only that Appellant timely filed a notice of appeal on March 6, 2014. The Court of Common Pleas ordered Appellant on May 9, 2014, to file a concise statement

_____

[1] 35 P.S. § 780-113(a)(16), (31), respectively.

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on May 20, 2014. Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

> WAS NOT [APPELLANT] UNLAWFULLY STOPPED AND SEIZED IN VIOLATION OF ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS THE POLICE LACKED REASONABLE SUSPICION THAT HE WAS INVOLVED IN CRIMINAL ACTIVITY; AND THEREFORE MUST NOT ALL THE FRUITS OF THAT UNLAWFUL DETENTION BE SUPPRESSED?

(Appellant's Brief at 3).

Appellate review of an order denying a suppression motion implicates the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
>> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Williams**, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of

witnesses and the weight to be given their testimony." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa.Super. 2006)).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." ***Commonwealth v. Moultrie***, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting ***Commonwealth v. Blair***, 860 A.2d 567, 571 (Pa.Super. 2004)) (internal quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether…the citizen-subject has been seized. Instances of police questioning involving no seizure or detentive aspect (mere or consensual encounters) need not be supported by any level of suspicion in order to maintain validity." ***Commonwealth v. Strickler***, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000). "A mere encounter is characterized by limited police presence and police conduct and questions that are not suggestive of coercion. It is only when such police presence becomes too intrusive, the interaction must be deemed an investigative detention or seizure." ***Commonwealth v. Hill***, 874 A.2d 1214, 1220-21 (Pa.Super. 2005) (quoting ***Commonwealth v. Reppert***, 814 A.2d 1196 (Pa.Super. 2002)) (internal quotation marks omitted). "Thus, the law recognizes some level of intrusiveness when a mere

encounter occurs." ***Id.*** at 1221.

Additionally, "[t]he central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus." ***Moultrie, supra*** (quoting ***Commonwealth v. LaMonte***, 859 A.2d 495 (Pa.Super. 2004)) (internal quotation marks omitted).

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant…. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

***Commonwealth v. Smith***, 621 Pa. 218, 236, 77 A.3d 562, 573 (2013) (internal citations and quotation marks omitted). Furthermore,

> [T]here is no requirement that a police officer advise a person that he…may refuse consent to be searched. Unless the totality of factors indicate[s] that the consent was the product of express or implied duress or coercion…the mere fact that a police officer did not specifically inform an appellant that he…could refuse the

> request will not in and of itself result in a determination
> that the subsequent search was involuntary.

**Moultrie, supra** at 360 (citing **Commonwealth v. Key**, 789 A.2d 282, 291 (Pa.Super. 2001)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joan A. Brown, we conclude Appellant's issue merits no relief. The Court of Common Pleas' opinion comprehensively discusses and properly disposes of Appellant's question presented. (**See** Court of Common Pleas Opinion, filed January 16, 2015, at 5-6) (finding: while dressed in uniform, Officer McClister initially approached Appellant on concourse of busy train station because he appeared to be under influence of drugs or alcohol; Officer McClister did not block Appellant's path or display any weapons; Officer McClister asked Appellant if he would mind speaking with Officer McClister, and Appellant agreed; Officer McClister asked Appellant whether he possessed any weapons or drugs, and Appellant voluntarily responded that he had "marijuana blunt"; no indication Appellant was aware of any other police officers other than Officer McClister, his partner, and his sergeant; record fails to show Officer McClister's tone of voice was authoritative or demanding; Officer McClister's questions were general and not accusatory; Appellant's admission to possession of marijuana escalated interaction from mere encounter to lawful arrest; court properly denied Appellant's petition for writ of *certiorari*). The record supports the court's decision; therefore,

we have no reason to disturb it. Accordingly, we affirm on the basis of the Court of Common Pleas' opinion.[2]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2015

---

[2] We observe that the trial court opinion at 4, first full paragraph, begins with the incorrect standard of review, *i.e.*, the one pertaining to when the Commonwealth appeals from an order suppressing evidence. That standard differs from the one applicable to an appeal from an order denying suppression. The trial court opinion is otherwise accurate.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | COMMON PLEAS DOCKET |
| | : | **MC-51-CR-0039542-2013** |
| | : | |
| V. | : | SUPERIOR COURT |
| | : | NO. 752 EDA 2014 |
| ANGEL FELICIANO | : | |

## OPINION

**FILED**

JAN 16 2015

Criminal Appeals Unit
First Judicial District of PA

By: The Honorable Joan A. Brown

### PROCEDURAL AND FACTUAL HISTORY

Defendant, Angel Feliciano was tried in the Philadelphia Municipal Court on the charges of Possession of a Controlled Substance (35 § 780-113 §§ A16) as well as Possession of Marijuana (35 § 780-113 §§ A31). On December 16, 2013, just prior to trial, the defendant litigated a motion to suppress evidence before Judge J. Scott O'Keefe. That Motion was denied. The evidence was incorporated into the trial and Mr. Feliciano was found guilty by the Court and sentenced to twelve (12) months probation on the charges listed.

A Writ of Certiorari to the Court of Common Pleas was filed on behalf of the appellant and litigated before this Court on February 27, 2014. After oral argument on the issues presented, this Court denied the Writ and found no error in the Municipal Court's decision to deny the Suppression Motion of the appellant.

At the suppression hearing, on December 16, 2013, Amtrak Officer Sean McClister testified that he was on duty on October 10, 2013 at approximately 5:45 p.m., when he

1

encountered the appellant at the 30th Street Station Concourse, in Philadelphia. N.T. 12/16/13, pp. 5-7.

At that time and place, the officer indicated that he observed Mr. Feliciano walking on the platform and appeared to be under the influence of either drugs or alcohol at the time. Officer McClister simply indicated that he asked Mr. Feliciano if he could speak with him. What happened next is a recapitulation of the sworn testimony:

By The Commonwealth:

Q: What did you do when you observed the Defendant?

By Officer McClister:

A: I asked him if I could speak with him.

By The Commonwealth:

Q: What did he say?

By Officer McClister:

A: Sure.

By The Commonwealth:

Q: And what happened, did you speak to him?

By Officer McClister:

A: I asked him if he had any weapons, knives, guns, or drugs on his person. At that time, he answered me. His speech was slurred. He advised me that was in possession of a marijuana blunt.

By The Commonwealth:

Q: What did he do after he told you that he had marijuana blunt?

By Officer McClister:

2

A: He provided me with that.

(N.T. 12/16/13, p. 7)

Cross examination of Officer McClister continued with defense attorney asking the following questions:

By Mr. Mallon:

Q: And then your Sargent came up, in uniform as well, to, correct?

By Officer McClister:

A: Correct.

By Mr. Mallon:

Q: Ok. And at this point, he's not free to leave correct?

By Officer McClister:

A: Correct.

The above highlighted testimony seems to succinctly put into perspective the issues raised by the appellant in his Statement Of Errors Complained On Of Appeal. A legal discussion follows.


## **DISCUSSION**

The appellant complains on appeal that the trial court (O'Keefe, J.) erred an denying appellant's Motion to Suppress physical evidence and statements, where appellant was subjected to a detention, arrest, frisk and search without reasonable suspicion or probable cause, where both the narcotics recovered and the statements made by the appellant were the fruit of that unlawful action, and where appellant's statements were additionally the product of custodial interrogation without the benefit of *Miranda* warnings. This Court (Brown. J.) erred in denying

3

appellant's Petition for a Writ of Certiorari on the same grounds.

When the Commonwealth appeals an order suppressing evidence, this Court must consider only the evidence of the defendant's witnesses and the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court is bound by the [suppression] court's findings of fact if they are supported by the record, but we must examine any legal conclusions drawn from those facts. The Standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are, in fact, supported by the record and whether the legal conclusions drawn from those facts are correct; *Commonwealth v. Pickron,* 535 Pa. 241, 246, 634 A.2d 1093, 1096 (1993). Since the appellant did not present any witnesses during the suppression hearing, we look only to the Commonwealth's evidence. With this standard in mind, we must decide whether the officers' encounter with Mr. Feliciano constituted a **mere encounter**, an **investigative detention**, or a **seizure**. *Commonwealth v. Ellis,* 541 Pa. 285, 293–94, 662 A.2d 1043, 1047–48 (1995). 34, See also *Commonwealth v. Boswell,* 554 Pa. 275 (Pa. Supreme 1998)

The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures...." Article I, § 8 of the Pennsylvania Constitution similarly provides, in part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...."[3] No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them. The United States Supreme Court has stated that "the Fourth Amendment permits police officers to approach individuals at random in airport

4

lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick,* 501 U.S. 429, 431, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Consequently, not every **encounter** is so intrusive so as to trigger constitutional protections. *Terry v. Ohio,* 392 U.S. 1, 20, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *In the Interest of Jermaine,* 399 Pa.Super. 503, 582 A.2d 1058 (1990), *allocatur denied,* 530 **Pa.** 643, 607 A.2d 253 (1992). It is only when the officer, by means of physical force, or by displaying or asserting authority, restrains the liberty of the citizen that a "seizure" occurs. *Terry,* at 20, n. 16, 88 S.Ct. 1868. " 'Any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' " *Commonwealth v. Lewis,* 535 **Pa.** 501, 636 A.2d 619 (1994) (quoting *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)).

Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. *Commonwealth v. Vasquez,* 703 A.2d 25, 30 (Pa.Super.1997). If the police action becomes too intrusive, a mere encounter may escalate into an investigatory **stop** or a seizure. *Commonwealth v. Jackson,* 428 Pa.Super. 246, 249, 630 A.2d 1231, 1233 (1993). If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. *Id.* Probable cause must support a custodial detention or arrest. *Id.*

Here, Officer McClister, dressed in uniform approached the appellant on the concourse of a busy train station. There is no indication that Mr. Feliciano was aware of any other members of

5

the police force who did not stand with the questioning officers. He did not block the appellant's path and neither officer displayed any weapons. Furthermore, they did not inform him that they (the police) were part of any investigation, *See Commonwealth v. Martin*, 705 A.2d 887, 891 (Pa.Super.1997) ( "A statement by a law enforcement official that a person is suspected of illegal activity is persuasive evidence that the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution have been implicated."); *Jermaine* Id., Instead, Officer McClister asked appellant if he would mind speaking with him. Mr. Feliciano agreed to speak with the officer. The officer questioned him regarding possession of weapons and drugs, at which time the appellant stated voluntarily that he was in "possession of a marijuana blunt." There is nothing in the record to indicate that the tone of voice was authoritative or demanding and the content of his question was general and not accusatory. See also, *Commonwealth v. Hudson*, 995 A.2d 1253 (Pa.Super 2010)

The appellant's admission to possession of contraband converted this mere encounter into a lawful arrest. Accordingly, this Court properly denied appellant's petition for writ of certiorari in the interests of justice.

BY THE COURT:

_____
JOAN A. BROWN,    J.

DATE: 1/16/15

6